THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ZO SKIN HEALTH, INC.,

                    Plaintiff,

           -against-

WELLNESS CENTER PHARMACY and
MOHAMMAD MANSOUR,

                 Defendants.

----------------------------------------------------------------X

Civil Action No.:

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiff ZO Skin Health, Inc. ("ZO Skin Health" or "Plaintiff"), by its undersigned attorneys, Lynch Daskal Emery LLP and Vorys, Sater, Seymour and Pease, LLP, brings this action against Defendants Wellness Center Pharmacy and Mohammad Mansour (collectively, "Defendants") and alleges:

## NATURE OF THE ACTION

1.     This action arises out of the Defendants' unlawful obtainment and sale, and unauthorized distribution of ZO Skin Health products online and through the Defendants' brick-and-mortar storefront, in violation of 15 U.S.C. §§ 1114, 1125(a) and (c), and other related claims. ZO Skin Health accordingly seeks, among other things, compensatory and punitive damages and an order enjoining defendants from continuing their infringement of ZO Skin Health trademarks.

## PARTIES, JURISDICTION AND VENUE

2.     ZO Skin Health is a corporation, organized under the existing laws of the State of California, with its principal place of business located in Irvine, California.

3. Wellness Center Pharmacy is a corporation, organized under the existing laws of the State of New York, with its principal place of business located at 40-15 Broadway, Astoria, New York 11103.

4. Upon information and belief Mohammad Mansour ("Mr. Mansour") is a natural person who manages Wellness Center Pharmacy in Astoria, New York.

5. The Court has federal question jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution and laws of the United States; the provisions of 28 U.S.C. § 1338 because this is a civil action arising under an Act of Congress relating to trademarks; the provisions of 15 U.S.C. § 1114 and 15 U.S.C. § 1125.

6. The Court has supplemental jurisdiction over the state-law claims of ZO Skin Health pursuant to the provisions of 28 U.S.C. § 1367.

7. Venue is proper in this District and this Division under, without limitation, 28 U.S.C. §§ 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims occurred in this District and this Division and the Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### *ZO Skin Health & Its Trademarks*

8. ZO Skin Health develops and sells high-end skin care products by utilizing cutting-edge science and the extensive clinical experience of its medical director, Dr. Zein Obagi.

9. ZO Skin Health devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation. Each product is

2

packaged so that the ZO Skin Health brand is easily and readily identifiable. Furthermore, each product is handled with the utmost care and precision during the packaging and transport process. In the highly competitive skin care market, quality is a fundamental part of the consumer's decision to purchase a product.

10.   ZO Skin Health has registered several trademarks with the United States Patent and Trademark Office with respect to its brand and products, including but not limited to: "ZO"®, registration no. 3443712; "Offects"®, registration no. 3818858; "Ossential"®, registration no. 3593734; "Ommerse"®, registration no. 3544801; "Oclipse"®, registration no. 3774720; "Olluminate"®, registration no. 3534953; and "Oraser"®, registration no. 3534951, "Balatone"®, registration no. 4369426; "Brightenex"®, registration no. 4369427; "Cebatrol"®, registration no. 4700117; "Glycogent"®, registration no. 4314219; "Melamin"®, registration no. 4369429; "Melamix"®, registration no. 4403996; "Normacleanse"®, registration no. 4369425; "Oilacleanse"®, registration no. 4314218; "Retamax"®, registration no. 4369428; "Brightamax"®, registration no. 41717108, "Restoracalm"®, registration no. 4717109; and "ZO Medical"®, registration no. 4318377 (collectively, the "ZO Trademarks").

11.   The registration for each of the ZO Trademarks is valid, subsisting and in full force and effect. Further, pursuant to 15 U.S.C. § 1065, the ZO Trademarks serve as conclusive evidence of ZO Skin Health's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of ZO Skin Health's products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

12.   ZO Skin Health actively uses and markets all of the ZO Trademarks in commerce.

3

13. Due to the quality and exclusive distribution of ZO Skin Health's products, and because ZO Skin Health is uniquely recognized as the source of these high quality products, the ZO Trademarks have enormous value.

### *ZO Skin Health Production, Distribution, and Quality Control*

14. Due to the professional grade of its products, ZO Skin Health exercises strict quality control over the production and distribution of its skin care products. Each product contains a universal product code ("UPC"), batch code and date affixed to the packaging or container of the product, which play an important role in fighting counterfeits. Because of the high expense involved in placing a unique number on each unit, counterfeiters will generally either omit such information from their packaging or repeatedly use sets of fake numbers on a series of counterfeit units. The UPC system, therefore, facilitates the spotting of counterfeit units by allowing an investigator to make a determination based on the absence of a UPC on the packaging or the use of a fake UPC number.

15. The UPC, batch code and date also assist ZO Skin Health's ability to protect its brand against quality slippage in genuine authorized products. When a quality problem surfaces, the UPC identifies the place of the manufacturer, the batch in which the defect was found, and other identifying information. This information can help ZO Skin Health to recall those distributed products that may share the defect and to prevent further recurrence of the defect. In light of the possibility for an adverse reaction with respect to any topical skin product, it is critical for ZO Skin Health to have the ability to take measures to control the quality and integrity of its products, and the value of its trademarks.

16. ZO Skin Health maintains its quality controls by strictly adhering to its policy of attaching a UPC, batch code and date to each of the products it sells, working with its

4

manufacturer to ensure that a UPC, batch code and date are applied to each of the products, and conducting a regular review of the products in the market to ensure that information is not being removed from its products.

17. ZO Skin Health also provides purchasers of ZO Skin Health products through its legitimate chains of distribution with warranties to ensure the safe and effective use of ZO Skin Health products.

18. In order to monitor the distribution of its products, ZO Skin Health also periodically affixes undetectable invisible ink marks to its products displaying the invoice number under which the products were purchased.

19. ZO Skin Health also maintains its quality controls by limiting the sale of its products to authorized dermatologists, plastic surgeons, and other medical professionals for direct sale to patients.

20. ZO Skin Health maintains its exclusive relationship with authorized distributors because the products it produces are medical grade and used to treat skin diseases.

21. ZO Skin Health products contain potent chemicals, such as retinoic acid, to stabilize, care for and cure various skin diseases and ailments. In order for them to be effective, and most importantly safe, the products must be administered by healthcare professionals, and according to unique protocols to correct medical skin conditions. The products developed by ZO Skin Health are designed to work together for specific skin conditions.

22. ZO Skin Health's authorized distributors receive and review a series of manuals that contain the protocols for administrating ZO Skin Health products, and only then instruct the patients on how the products should be used, when they should be used, and under what circumstances to apply treatment.

23.     For instance, ZO Skin Health's Pigmentation System for treatment of hyperpigmentation and melasma includes six steps and four optional steps involving ten different products with specific directions for the use of each product.   In order to properly treat hyperpigmentation, and avoid unwanted and unplanned side effects, an authorized distributor must follow ZO Skin Health's quality controls and protocols and must instruct the patient to precisely follow each step.

24.     Further, the strength of ZO Skin Health's Pigmentation System can be controlled by adjusting the amount of products used by the patient and the frequency of their application.

25.     Similarly, ZO Skin Health also has a line of products named "ZO Medical" that are supposed to be sold under medical supervision and instruction.   Medical supervision and instruction regarding the use of these products is fundamental to the quality of these products. For instance, within this line of products, ZO Skin Health has two medical products -- Melamin and Melamix -- that contain hydroquinone.   Hydroquinone is a potent chemical that typically requires a prescription.   Because Melamin and Melamix contain hydroquinone, the quality of these products depends on the dosage amount for these products being properly prescribed and conveyed by a licensed physician.   The quality of Melamin and Melamix also depends on licensed physicians evaluating whether the patient has any allergies that could affect the impact of these products, whether the patient is of sufficient age to use these products, and whether the use of the products is safe and appropriate for the patient.   Because all of these factors are important to the quality of the products being offered by ZO Skin Health, ZO Skin Health goes to great effort to ensure that these products are only sold to patients by those who are trained to appropriately prescribe and monitor the use of these products.   Any interference with these

6

processes materially alters the quality of the products, and thus, not only infringes upon ZO Skin Health's trademarks, but puts the consumers at great risk.

26. For these reasons, during the application process, authorized distributors are provided documents which make clear that ZO Skin Health prohibits the resale of its products on the Internet.

27. In addition, each ZO Skin Health order form specifically states that distributors "are not permitted to sell [ZO Skin Health] products on the Internet in any manner, to sell to anyone a quantity of the products greater than that generally purchased by an individual for personal use, or to sell to anyone who you believe intends to re-sell the products to other parties."

28. ZO Skin Health requires that these order forms be submitted by email or facsimile when an authorized distributor places an order.

### ZO Skin Health Polices the Sale of Its Products on the Internet

29. Due in part to the egregious conduct of Defendants and others, and in light of the significant problem ZO Skin Health has encountered with respect to the illegal sale of its products on the Internet, ZO Skin Health polices the sale of its products on the Internet.

30. Specifically, ZO Skin Health marks selected products from several orders with invisible ink in order to track and identify the products in the order, and also purchases products from online retailers with a significant Internet presence to locate the source of the products.

31. Upon information and belief, Defendants are unauthorized distributors who unlawfully obtained and sold ZO Skin Health products online and through their storefront without authorization from ZO Skin Health.

32.     Upon information and belief, Mr. Mansour is not a licensed physician, yet Mr. Mansour had obtained and was selling ZO Medical products to customers who were not under a physician's care and had not received proper instruction as to how to use ZO Medical products.

33.     When Defendants began unlawfully selling ZO Skin Health products, they did so in violation of the ZO Trademarks and the distribution agreements that ZO Skin Health maintains with its authorized distributors.

34.     As a result, on or about December 2014, ZO Skin Health sent a demand letter to Defendants demanding the immediate disclosure of the source of the ZO Skin Health products they had in their possession and/or had sold to their customers, and informing all parties that legal action may be pursued against them.  No response was received.

35.     Having received no response to its demand letter, ZO Skin Health served subpoenas for production and appearance on Defendants in February 2015.  The Defendants failed to respond to the subpoena for production and did not appear at the scheduled deposition.

### Defendants' Unauthorized Sale of ZO Skin Health Products in Violation of the ZO Trademarks

36.     Defendants, without authorization from ZO Skin Health, sold products bearing the ZO Trademarks on the Internet and in their storefront.

37.     The products that Defendants sold bearing the ZO Trademarks were materially different than genuine ZO Skin Health products.

38.     Indeed, Defendants sold ZO Skin Health products that were not in fact genuine ZO Skin Health products because the ZO Skin Health products were sold without any of ZO Skin Health's quality controls, any of ZO Skin Health's skin care program instructions, any

8

physician evaluation or monitoring, or any of the warranties offered by ZO Skin Health through its legitimate chains of distribution.

39. As a result, by their unauthorized use of the ZO Trademarks, Defendants were misleading consumers into believing they were purchasing products with the same quality controls as ZO Skin Health products; however, in reality, the products that they were selling with the ZO Trademarks were materially different from genuine and authentic ZO Skin Health products.

40. Each consumer that purchased a ZO Skin Health product from Defendants was wholly deceived because not a single consumer received ZO Skin Health's established quality controls, the proper instructions related to the use of the product, or the warranties that ZO Skin Health offers its customers through the authorized chains of distribution.

41. In addition to Defendants' clear deception of consumers, Defendants falsely identified the source of the ZO Skin Health products that they were selling. As is evidenced by their total failure to disclose in the product descriptions that they were not an authorized retailer of ZO Skin Health's products—Defendants actively concealed their identity and caused the products it sold to be shipped and diverted in furtherance of this subterfuge.

42. Moreover, upon information and belief, Defendants induced unknown distributors of ZO Skin Health to violate their distribution agreements with ZO Skin Health and facilitate the sale of ZO Skin Health products on the Internet in violation of those distribution agreements and the ZO Trademarks.

### *Defendants' Illegal Alteration And Sale Of ZO Skin Health Products*

43. Without authorization from ZO Skin Health, Defendants sold products bearing the ZO Trademarks on the Internet.

9

44.     The products that Defendants sold bearing the ZO Trademarks were materially different than ZO Skin Health's products because, among other things, the UPC, batch code, lot number, and/or date had been altered or removed prior to sale.

45.     As a result, by its unauthorized use of the ZO Trademarks, Defendants were misleading consumers into believing they were purchasing products with the same quality controls as ZO Skin Health products; however, in reality, the products that Defendants were selling with the ZO Trademarks were materially different from genuine and authentic ZO Skin Health products.  Indeed, when the UPC, batch code or date was removed from the ZO Skin Health products, ZO Skin Health lost its primary ability to control the quality of those products, as well as other products from the same batch.

### Defendants' Unauthorized Advertisement of ZO Skin Health Products Using the ZO Trademarks

46.     Defendants also misled consumers through its unauthorized use of the ZO Trademarks to advertise the sale of products on the Internet.

47.     Defendants utilized the ZO Trademarks in an effort to capitalize on the goodwill that ZO Skin Health has developed and maintained.

48.     Defendants' use of the ZO Trademarks in commerce without ZO Skin Health's consent likely deceived and confused consumers and/or resulted in mistake because it suggested that the products offered for sale by Defendants originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

49.     Defendants' unauthorized sale of products with the ZO Trademarks, and their use of the ZO Trademarks in advertising, infringed upon and damaged the ZO Trademarks and also interfered with ZO Skin Health's existing and potential business relations by diverting current

and potential patients and consumers to purchase their products at unauthorized, discounted prices.

### *ZO Skin Health Has Suffered Significant Harm*

50.     ZO Skin Health has suffered significant monetary damages from Defendant's actions including, but not limited to, loss of sales for ZO Skin Health products, trademark infringement, and damage to its existing and potential business relations.

51.     ZO Skin Health has suffered, and will continue to suffer, irreparable harm to its quality control procedures, the ZO Trademarks, and its business relationships with legitimate distributors.   As a result of Defendants' actions, ZO Skin Health's legitimate distributors are more likely to terminate their agreements to sell ZO Skin Health's products.

52.     ZO Skin Health has also suffered, and will continue to suffer, irreparable harm to its quality control procedures, the ZO Trademarks, and its good-will based upon Defendants' actions.

53.     Defendants' conduct was knowing, intentional, willful, malicious, wanton and contrary to law.

54.     ZO Skin Health is entitled to injunctive relief because Defendants will otherwise continue to unlawfully sell and allow the sale of ZO Skin Health products in violation of the ZO Trademarks; sell ZO Skin Health's medical products; sell materially different ZO Skin Health products where the UPC, batch code, lot number, and/or date has been removed from ZO Skin Health products; sell ZO Skin Health products outside regular distribution channels compromising quality control; cause irreparable harm to ZO Skin Health's good-will; and cause ZO Skin Health and its distributors to lose business.

55.     Defendants' willful violations of the ZO Trademarks and continued pattern of conduct demonstrate an intent to harm ZO Skin Health and have inflicted immense harm.

## FIRST CAUSE OF ACTION
### Trademark Infringement – Defendants
### 15 U.S.C. § 1114

56.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-55 above, and incorporates each allegation herein by reference.

57.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

58.     Defendants willfully and knowingly used the ZO Trademarks in commerce in connection with the sale of products on the Internet without the consent of ZO Skin Health.

59.     The use of the ZO Trademarks in connection with the unauthorized sale of products on the Internet by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were the same as the products legitimately bearing the ZO Trademarks, and originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

60.     Defendants' unauthorized use of the ZO Trademarks has materially damaged the value of the ZO Trademarks, caused significant damages to ZO Skin Health's business relations, and infringed on ZO Skin Health's trademarks.

61.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales for the products sold by Defendants, trademark infringement, and damage to its existing and potential business relations.

62.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### Trademark Infringement - Defendants
### 15 U.S.C. § 1114

63.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-62 above, and incorporates each allegation herein by reference.

64.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

65.     Defendants willfully and knowingly used the ZO Trademarks in commerce with the sale of ZO Skin Health products.

66.     The use of the ZO Trademarks in connection with sale of ZO Skin Health products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were genuine and authentic ZO Skin Health products.

67.     The products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products. The products sold by Defendants were materially different because, among other reasons, the UPCs, batch codes, lot numbers, and dates had been altered and/or removed on the products.

68.     Defendants' unauthorized sale of products bearing the ZO Trademarks infringed on the ZO Trademarks.

69.     Defendants' unauthorized use of the ZO Trademarks infringed on the ZO Trademarks.

70.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

71.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

### THIRD CAUSE OF ACTION
### Trademark Infringement – Defendants
### 15 U.S.C. § 1114

72.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-71 above, and incorporates each allegation herein by reference.

73.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

74.     Defendants willfully and knowingly used the ZO Trademarks in commerce in connection with the sale of ZO Skin Health products.

75.     The use of the ZO Trademarks in connection with the sale of ZO Skin Health products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were genuine and authentic ZO Skin Health products.

76.     The products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products. The products sold by Defendants were materially different because, among other reasons, the products sold by Defendants did not have the same quality control procedure as authentic ZO Skin Health products, consumers did not receive the proper instructions related to the use of the product, and consumers did not receive the warranties that ZO Skin Health offers its customers through the authorized chains of distribution.

77.     Defendants' unauthorized sale of products bearing the ZO Trademarks infringed on the ZO Trademarks.

78.     Defendants' unauthorized use of the ZO Trademarks infringed on the ZO Trademarks.

79.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

80. Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

### FOURTH CAUSE OF ACTION
### False Advertising – Defendants
### 15 U.S.C. § 1125(a)

81. ZO Skin Health re-alleges the allegations set forth in paragraphs 1-80 above, and incorporates each allegation herein by reference.

82. The ZO Trademarks are valid and subsisting trademarks in full force and effect.

83. Defendants willfully and knowingly used the ZO Trademarks in commerce in connection with the sale and advertising of products without the consent of ZO Skin Health.

84. The use of the ZO Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were genuine and authentic ZO Skin Health products, and originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

85. Defendants' unauthorized sale of products bearing the ZO Trademarks infringed on the ZO Trademarks.

86. Defendants' unauthorized use of the ZO Trademarks in advertising otherwise infringed on the ZO Trademarks.

87. As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

88. Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## FIFTH CAUSE OF ACTION
### Unfair Competition – Defendants
### 15 U.S.C. § 1125(a)

89.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-88 above, and incorporates each allegation herein by reference.

90.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

91.     Defendants willfully and knowingly used the ZO Trademarks in commerce in connection with the sale and advertising of products without the consent of ZO Skin Health.

92.     The use of the ZO Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship or approval of ZO Skin Health products because it suggested that the products offered for sale by Defendants originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

93.     Defendants' unauthorized sale of products bearing ZO Trademarks, and unauthorized use of ZO Trademarks in advertising materially damaged the value of the ZO Trademarks and caused significant damages to ZO Skin Health's business relations.

94.     Defendants' unauthorized sale of products bearing ZO Trademarks and unauthorized use of ZO Trademarks in advertising infringed on the ZO Trademarks.

95.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

96.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## SIXTH CAUSE OF ACTION
### Trademark Dilution – Defendants
### 15 U.S.C. § 1125(c)

97.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-96 above, and incorporates each allegation herein by reference.

98.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

99.     ZO Skin Health is the owner of the ZO Trademarks, which are distinctive and widely recognized marks by the consuming public. ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

100.    ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademarks.

101.    Defendants' willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of its products diluted the ZO Trademarks because the products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.

102.    As a result of Defendants' unlawful actions, the reputation of the ZO Trademarks was harmed and ZO Skin Health suffered immediate and irreparable injury.

103.    Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

104.    Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## SEVENTH CAUSE OF ACTION
### New York State Trademark Infringement – Defendants
### N.Y. Gen. Bus. Law § 360 et seq.

105.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-104 above, and incorporates each allegation herein by reference.

106.    This claim arises under the laws of the State of New York.

107.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

108.    ZO Skin Health is the owner of the ZO Trademarks, which are distinctive and widely recognized marks by the consuming public.  ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

109.    ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademarks.

110.    Defendants' knowing and willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of their products without ZO Skin Health's consent infringed on the ZO Trademarks.

111.    The ZO Skin Health products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.

112.    As a result of Defendants' unlawful actions, the reputation of the ZO Trademarks was harmed and ZO Skin Health suffered immediate and irreparable injury.

113.    Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

**EIGHTH CAUSE OF ACTION**
**New York State Trademark Infringement – Defendants**
**N.Y. CLS Art & Cult. Affr. § 33.09**

114.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-113 above, and incorporates each allegation herein by reference.

115.    This claim arises under the laws of the State of New York.

116.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

117.    ZO Skin Health is the owner of the ZO Trademarks, which are distinctive and widely recognized marks by the consuming public. ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

118.    ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademarks.

119.    Defendants' knowing and willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of their products without ZO Skin Health's consent infringed on the ZO Trademarks.

120.    The ZO Skin Health products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.

121.    As a result of Defendants' unlawful actions, the reputation of the ZO Trademarks was harmed and ZO Skin Health suffered immediate and irreparable injury.

122.    Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

## NINTH CAUSE OF ACTION
### Unfair and Deceptive Business Practices - Defendants
### N.Y. Gen. Bus. Law § 349

123.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-122 above, and incorporates each allegation herein by reference.

124.     This claim arises under the laws of the State of New York.

125.     Defendants have engaged and are engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of § 349 of the NY General Business Law.

126.     Defendants' knowing and willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of their products without ZO Skin Health's consent infringed on the ZO Trademarks. The ZO Skin Health products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products. Defendants' conduct is likely to mislead a sensible consumer acting reasonably under the circumstances.

127.     Defendants' conduct has resulted or is likely to result in consumer injury or harm to the public interest.

128.     As a result of Defendants' unfair and deceptive business practices, ZO Skin Health has suffered and continues to suffer substantial injury, including loss of sales and damage to its existing and potential business relations.

## TENTH CAUSE OF ACTION
### Tortious Interference With Business Relations – Defendants

129.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-128 above, and incorporates each allegation herein by reference.

130.     This claim arises under the laws of the State of New York.

131. ZO Skin Health had a business relationship with third parties through its distribution agreements with authorized distributors to sell ZO Skin Health products.

132. Defendants interfered with the business relationship between ZO Skin Health and third parties, its authorized distributors, by selling ZO Skin Health products on the Internet and in their storefront in violation of its distribution agreements.

133. Defendants knew ZO Skin Health had a business relationship with third parties through its distribution agreements with authorized distributors and acted with a wrongful purpose by selling ZO Skin Health products on the Internet in violation of its distribution agreements.

134. Defendants' actions caused injury to ZO Skin Health for which ZO Skin Health is entitled to damages.

## **PRAYER FOR RELIEF**

WHEREFORE, ZO Skin Health prays for relief and judgment as follows:

A. Judgment in favor of ZO Skin Health and against Defendants, in an amount to be determined at trial, but not limited to, compensatory damages, statutory damages, treble damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B. Preliminary and permanent injunctions enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i) Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, any and all ZO Skin Health products as well as any products bearing any of the ZO Trademarks including, but not limited to,

ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm, and ZO Medical,

ii) Prohibiting the Enjoined Parties from using any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm, and ZO Medical in any manner, including advertising on the Internet,

iii) Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all ZO Skin Health products as well as any products bearing any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm, and ZO Medical,

iv) Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ZO Skin Health's products, or any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm, and ZO Medical,

22

v)     Requiring the Enjoined Parties to take all action to remove from the Internet any of the ZO Trademarks which associate ZO Skin Health's products or the ZO Trademarks with the Enjoined Parties or the Enjoined Parties' website and all other websites or storefronts under the Enjoined Parties' control from the Internet search engines (such as Google, Yahoo!, and Bing),

vi)     Requiring the Enjoined Parties to take all action within their power or authority to remove the ZO Trademarks from the Internet;

vii)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ZO Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks, and

C.     An award of attorneys' fees, costs, and expenses.

D.     Such other and further relief as the Court deems just, equitable and proper.

Dated: New York, New York
   June 26, 2015

        Respectfully submitted,

        LYNCH DASKAL EMERY LLP

        James R. Lynch, Esq.
        Alexander Broche, Esq.
        264 West 40th Street
        New York, New York 10018
        Phone: (212) 302-2400
        lynch@lawlynch.com
        broche@lawlynch.com
          and
        VORYS, SATER, SEYMOUR AND PEASE LLP
        Whitney C. Gibson, Esq. (*pro hac vice* pending)
        James W. Kelly, II, Esq. (*pro hac vice* pending)
        301 East Fourth Street, Suite 3500
        Great American Tower
        Cincinnati, Ohio 45202
        Phone: (513) 723-4000
        wcgibson@vorys.com
        jwkelly@vorys.com

**JURY DEMAND**

Plaintiff ZO Skin Health demands trial by jury of all issues so triable.

James R. Lynch, Esq.
Alexander Broche, Esq.
264 West 40th Street
New York, New York 10018
Phone: (212) 302-2400
lynch@lawlynch.com
broche@lawlynch.com
              and
VORYS, SATER, SEYMOUR AND PEASE LLP
Whitney C. Gibson, Esq. (*pro hac vice* pending)
James W. Kelly, II, Esq. (*pro hac vice* pending)
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, Ohio 45202
Phone: (513) 723-4000
wcgibson@vorys.com
jwkelly@vorys.com

25